PRIM v. FARMERS' NAT. BANK OF DUBLIN.

No. 697.

Court of Civil Appeals of Texas. Eastland.
May 2, 1930.

Rehearing Denied May 30, 1930.

942

Chandler & Keith, of Stephenville, and Levy & Evans and McLean, Scott & Sayers, all of Fort Worth, for appellant.

R. L. Thompson and W. J. Oxford, both of Stephenville, for appellee.

FUNDERBURK, J.

The parties to this suit in the court below were Farmers' National Bank of Dublin, plaintiff, and S. H. Prim and wife, Ella Prim, Wallace Scott, as trustee, Mrs. Grace Lyon and T. A. Lyon, defendants. The suit was upon four notes, one in the principal sum of $3,700, executed by T. A. Lyon and S. H. Prim; another in the principal sum of $1,891, executed by S. H. Prim to plaintiff; another for the sum of $10,000, executed by said Prim to plaintiff, dated June 18, 1928, payable in monthly installments of $166.67 each, the allegations as to the installments being, "the first installment due on the 20th day of each month immediately thereafter succeeding until said $10,000.00 is fully paid and satisfied." It was further alleged that this note was secured by deed of trust on four tracts of land, there being a recitation in the deed of trust to the effect that failure to pay any part of taxes assessed against the land after such should become delinquent, should, at the option of the holder of said note, mature the whole amount of its principal. It was alleged that default had been made in the installment due September 20, 1928, and that failure to pay taxes had resulted in a suit by the state to collect same. Recovery of the entire amount was sought because of such default. Still another note was alleged to have been made on December 1, 1927, by S. H. Prim and M. Hoffman in the principal sum of $4,154,

with 10 per cent. interest from date. This note, it was alleged, had been originally executed to the Citizens' National Bank of Dublin, Tex., and had been duly, and for value, transferred to the Farmers' National Bank. It was alleged that Hoffman, the other maker, was actually and notoriously insolvent. There were allegations as to an attachment having been issued, not necessary to notice here, and the prayer of plaintiff was for recovery of its entire debt against Prim, and for foreclosure of its deed of trust lien as against the other parties to the suit.

The answer of Prim, in so far as material to questions presented, alleged, as to the $1,891 note, that it was not due when suit was filed. and that plaintiff had capriciously, arbitrarily, and fraudulently asserted the maturity thereof, knowing full well that said defendant had paid the interest thereon to a date beyond the institution of the suit. As to the $4,154 note, it was alleged: "That said note has been wrongfully and fraudulently altered in a material part, and is, therefore, void, unenforceable and uncollectable, and that the defendant Prim was relieved from all liability thereon, in that in the face of said note and under the terms thereof, the interest thereon was due from the 'maturity' of said note, and thereafter the plaintiff, its agents and servants, or someone acting for it, the name of whom is unknown to defendants but is well known to plaintiff, without the knowledge or consent of the makers thereof, materially altered and changed said note and the intent and purport thereof, in that the interest payment date was erased and stricken out, and there was inserted therein the word 'date' as a substitute for the word 'maturity.' As a result thereof, the same was changed so as that it now reads that the interest thereon was payable from date, which said alteration, change, erasure and substitution invalidates said note, and for the payment of which this defendant is not liable." With reference to the $10,000 note, Prim answered to the effect that T. A. Lyon, his son-in-law, had become indebted to plaintiff bank, as a result of cotton buying transactions, in the sum of approximately $35,000; that the bank claimed that Lyon had committed forgery in connection with bills of lading involved in the handling of the cotton, and threatened that, unless Prim executed notes covering the shortage, Lyon would be exposed as a criminal, prosecuted, and sent to the penitentiary, and at length alleges facts designed to show that he was placed under duress and coerced into signing the $10,000 note. Specific allegations of duress with reference to his signature upon the note and deed of trust were that it "was and is not his free act and deed, but in the matter of placing his signatures thereon his free will was overcome by the threats, duress and coercion above men-

tioned *and the inducements, promises and agreements hereinafter set forth."* Regarding the "inducements, promises and agreements" referred to, the allegations were: "That said bank, its agents and servants, in seeking the said Prim's signature to said notes and said deed of trust, mutually and impliedly understood and agreed with the defendant and parties thereto that in the event he would sign the said two notes, (that is, the $10,000.00 note and another note not involved in this suit), and deed of trust above mentioned, the said Ted Lyon would not be prosecuted criminally for the crime of forgery or any other offense in connection with said bills of lading or said cotton dealing, and that no court proceeding would be instituted that would expose the said Ted Lyon and humiliate and disgrace him and this defendant," etc. The allegations with reference to this matter closing as follows: "Defendant Prim says that, because of such threats and the plaintiff's and its agents' agreement and understanding, as aforesaid, he signed said two notes and said deed of trust, and for no other reason whatsoever."

It was further alleged: "That the said bank, its officers and agents, having knowledge that an offense against the penal laws of this state had been committed by the said T. A. Lyon, *agreed* with the said T. A. Lyon and with said Prim *directly* and *indirectly* (italics ours) not to prosecute or inform on the said T. A. Lyon in consideration of the execution and delivery of the note herein sued upon, which said note was so executed by the said Lyon and this defendant, delivered to the said bank, its officers and agents," etc.

Upon the trial special issues were submitted to the jury, and upon their answers judgment was rendered for the plaintiff, from which the said defendant S. H. Prim has appealed.

When the $1,891 note was offered in evidence, appellant objected on the ground that, because of pencilled notations on the note showing an extension of the time of payment beyond the due date stated in the note, there was a variance between the pleading and proffered evidence. We are of opinion that the pencilled notations were properly to be regarded as mere memoranda, not intended and probably not having the effect of extending the due date of the note. Hence the note as against the objection made was properly admitted.

Appellant also asserts that the judgment erroneously includes interest and attorneys' fees on the $1,891 note because suit was brought before the expiration of the time to which the note was extended, as shown by the pencilled notations above mentioned. It is admitted by appellant that the contention may not be good as to interest, but

it is urged as to the attorneys' fees. We are of opinion that the contention is without merit. The case was tried upon amended pleadings filed after the date to which it was contended the time of payment had been extended. In the meantime, appellant made no tender of any part of the principal or interest. If the time of the payment of the note had been extended, a question we do not undertake to determine, and had appellant tendered the principal and interest due, we would agree that it would be improper to allow recovery of attorneys' fees. This, however, not having been done, we think that the judgment, in that respect, as rendered, was correct.

The introduction in evidence of the $10,000 note was also objected to on the ground of a variance between the pleading and proof. As shown by the foregoing statement, this note was dated the 18th day of June, 1928. As to the payment of installments, it was alleged, "Said note was in sixty installments of $166.67 each, the first installment due on the 20th day of each month immediately thereafter succeeding until said $10,000.00 is fully paid and satisfied." The provision as it actually appeared in the note offered in evidence was: "This note is payable in sixty monthly installments of $166.67 each, the first installment being due and payable on or before the 20th day of September, 1928, and one installment to become due and payable on or before the 20th day of each succeeding month thereafter until the whole principal sum is paid." The note was correctly copied in the deed of trust to which the plaintiff's pleading referred as a part thereof. The pleading was ambiguous, manifestly the result of clerical error. While it failed to show the due date of the first installment, we think it sufficiently put the adversary on inquiry so as to preclude the claim of surprise on account of a variance. There was, therefore, we think, no error in introducing the note as against the objection made.

Special issue No. 5 submitted to the jury was as follows: "Was the defendant, S. H. Prim, induced to sign the said note referred to in Special Issue No. 4 solely upon the threats, if any, of said criminal prosecution? Answer 'Yes' or 'No.'" The jury answered, "No."

Special issue No. 4, referred to, was: "Prior to the execution and delivery of the $10,000.00 note herein sued on and exhibited in evidence before you, did the officers of the Farmers National Bank of Dublin, Texas, or either of them, directly or indirectly, make a threat to the defendant Prim to prosecute the defendant's son-in-law, T. A. Lyon, unless the indebtedness of T. A. Lyon was fixed up? Answer 'Yes' or 'No.'"

The jury answered this special issue, "Yes." The objection to special issue

944

No. 5 was that, in requiring the jury to find that the defendant Prim was induced to sign the note inquired about solely on account of the threats of criminal prosecution, there was thereby imposed upon the defendant a burden more onerous than that imposed by law, and that the jury was thereby precluded from finding that the execution of said note was induced in *part* by such threat. The trial court, and perhaps the parties to the suit, appear to have construed the defendant's pleading to urge, as two distinct grounds of defense, (1) duress, and (2) an illegal consideration, consisting of the agreement not to prosecute appellant's son-in-law. It is very doubtful if appellant, by his own allegations, did not nullify his defense of duress by allegations to the effect that he was induced to execute the note, not only by the threats, but by the promises and agreement not to prosecute. But we will dispose of the questions presented upon the assumption that both defenses were so pleaded as to be available and were submitted to the jury. Said special issue No. 5 submitted the issue of duress only. As to that issue there was no error, we think, in limiting the jury to a consideration of whether or not the alleged threats were the sole cause of appellant's executing the note. For threats to constitute duress available as a defense, it must appear that the effect they produced was "the sole and efficient cause of the action which he took." Black on Rescission and Cancellation, vol. 1, p. 587. If the action was induced, not by threats alone, but by the threats and some promise relied upon to secure an expected advantage, then we think there would be no duress. In Pratt Land & Improvement Company v. McClain, 135 Ala. 452, 33 So. 185, 93 Am. St. Rep. 35, it was held that, to authorize the cancellation of a conveyance for duress upon the grantor, the conveyance must have been procured solely by duress, independently of false promises. We are therefore of opinion that the objection to the special issue was not well taken.

■ Appellant contends that special issue No. 6 erroneously confined the jury in their finding of the existence of coercion to the very time when the note was signed. Appellant, we think, overlooks the distinction between coercion or duress, and the acts which produce same. It is essential that the coercion or duress be operative at the time the note was executed, and it was not only proper for the court to confine the jury to a consideration of whether or not there was coercion at the time the note was signed, but it would have been improper not to have done so. All of the evidence as to prior acts and the effect of same was available to enable the jury to determine appellant's condition of mind at the time he signed the note. We do not construe the special issue to exclude consideration of same. The objection to the issue was, therefore, we think, not well taken.

■■ Special issue No. 8, submitted to the jury, was as follows: "Did the officers of the Farmers National Bank of Dublin, Texas, or either of them, agree with S. H. Prim not to prosecute or inform the officers of the law on T. A. Lyon in consideration of the defendant S. H. Prim's executing and delivering the $10,000.00 note in question to the bank? Answer 'Yes,' or 'No.'" The jury answered the issue, "No."

The substance of the objection made to the issue and assigned as error here was that appellant had pleaded both an express and implied agreement, and was entitled to have each submitted disjunctively, and that submitting the issue as it was amounted to the submission of two issues in one. Appellant did not plead an express agreement and an implied agreement alternatively, but alleged, in substance, that the plaintiff expressly and impliedly agreed not to prosecute, etc. There is some doubt in our minds if this amounted to a pleading of either. If the agreement was express, then there was none implied. If it was implied, then there was none expressed. Appellant testified to an express agreement. The legal effect of such testimony was a denial that there was an implied agreement. The court was justified then, we think, in submitting only an issue of express agreement. If the issue as submitted did not call for only an express agreement, then it permitted the finding of either an express or implied agreement which was more favorable to appellant than he was entitled to by reason of what has just been said. This contention is likewise overruled.

For the reasons discussed, the contention that the court erred in refusing to submit special issue No. 11, requested by appellant, is likewise overruled. That issue was: "Was the $10,000.00 note which has been admitted in evidence, executed by the defendant, S. H. Prim upon an agreement or understanding, either express or implied, by the said S. H. Prim and any of the officers of the Farmers National Bank of Dublin, or either of said officers, that said officers or either of them would suppress or abandon said prosecution, or abstain from the prosecution of said charge of forgery against the said T. A. Lyon? Answer 'Yes' or 'No.'"

Appellant's testimony tendered the sole issue of an express agreement which constituted, in legal effect, a denial of an implied agreement.

■ Special issue No. 1 was as follows: "Did the defendant [plaintiff] bank or its agents, servants and employees, or either of them, or someone acting for them, change the $4154.00 note herein sued on, by striking out the word 'maturity' and writing the word 'date' therein, after said note had been signed by S. H. Prim?"

Appellant objected that the issue, as submitted, erroneously limited the inquiry so as

to exclude consideration of an alteration made by the payee bank with which appellee was subsequently consolidated. Appellant's pleading tendering the issue of alteration alleged that "plaintiff, its agents and servants or some one acting for it, the name of whom is unknown to defendants, but is well known to plaintiff, without the knowledge or consent of the makers thereof, materially altered and changed said note," etc. It thus appears that the issue submitted was practically identical with the issue as tendered by the pleading. If the pleading was such as to admit of proof of an alteration by Skinner, an officer of the payee bank, as it was evidently construed to be, as shown by special issue No. 2, relating to that matter, and by the fact that the evidence was developed on that point, then appellant was in no manner prejudiced by the form of the issue as submitted. If the pleading was not sufficiently comprehensive to admit of proof of that matter, still we think appellant cannot complain, since the issue at any rate conformed to appellant's pleading.

By three several bills of exception it is shown that appellee's counsel, during the closing argument to the jury, made declarations or statements as follows:

(1) "If the note had been changed, of course it would have been a forgery; it would defeat a recovery on it; there is not a man on this jury that doesn't know that."

(2) "If the testimony of Joe Little is believed, Prim will have to pay this note."

(3) "If Prim signed this note deliberately, he ought to have to pay this note and will have to pay it."

Appellant timely objected to the remarks of counsel, requested the court to instruct the jury not to consider same, and asked that the court declare a mistrial; all of which the court overruled. As to each of the three statements, it is urged that the argument constitutes reversible error. It has been held to be reversible error for counsel in argument to state to the jury the legal effect of their answers to special issues. McFaddin v. Hebert (Tex. Com. App.) 15 S.W.(2d) 213; Fidelity Union Gas Co. v. Cary (Tex. Com. App.) 25 S. W.(2d) 302.

However, "when the special issues submitted are such that men of ordinary intelligence would be presumed to know the legal effect of their answers, no injury could result by counsel telling them something they already know." McFaddin v. Hebert (Tex. Com. App.) 15 S.W.(2d) 213, 217; Ry. Co. v. Harling (Tex. Com. App.) 260 S. W. 1016.

When such is the case, the practice is to regard the error as harmless and not to require a reversal. We are inclined to the view that the argument here complained of is of that nature that if erroneous at all should be regarded as harmless. Each of the statements involved issues clearly defined, not only in the evidence, but by the pleadings that were read to the jury, and such that the jury should perhaps be presumed to know the legal effect of the matters discussed. But, whether such be the case or not, it is to be observed that counsel made no reference to any issue submitted to the jury. All of the decisions that we have examined dealing with the question involve cases where counsel pointed out an issue or a number of issues, and suggested to the jury to answer same, "Yes," or "No," or in a particular way, in order that a judgment be rendered for or against his client. So far as the statements supporting these several propositions show, counsel made no reference to any particular issue and certainly did not direct the jury to answer any issue in a certain way, or that any particular answer would have any certain result as to the judgment to be rendered. If anything that counsel may say in argument can, by deduction or inference only, be applied to some issue and be regarded as stating to the jury the legal effect of their answer to such issue, then it would seem to us that argument by counsel becomes a proceeding entirely too dangerous. The gravamen of the vice that has been condemned, in arguments informing juries of the effect of their answer to issues, has been the impropriety of counsel assuming that juries would, in advance, form a purpose to give a judgment for one party or the other and then answer the issues submitted as a means of carrying out such purpose. The argument here complained of is entirely free of any suggestion to the jury that they might wish to give a judgment for or against either party. We are therefore of opinion that we are not warranted in reversing the judgment because of this argument.

By the twelfth proposition it is asserted that there is error in the judgment in failing to give credit for the sum of $25. The appellee does not seem to contest this contention, and hence we assume, without making an investigation of the matter, that the contention is correct. It is a matter that appellant should have called to the attention of the trial court and we assume that, had such been done, the court would have made the correction. The judgment will be reformed to allow such credit, but the costs of the appeal will not be otherwise adjudged by reason of the reformation.

The witness McDonald, while on the stand, was asked the following questions, and gave the following answers:

"From your observations of his, (Prim's) acts, and what he said, and his mental condition, was he humiliated or frightened? Answer: No, sir, seemed very active and able to dictate, in other words, just how he was willing to fix this."

"Did Mr. Prim or not argue any at said meeting? Answer: Yes, sir."

It was objected that same was a conclusion, called for a conclusion and opinion of the witness, and invades the province of the jury, and was prejudicial. The court overruled the objections, and the question of the correctness of that action is presented here by proper assignment. We are of opinion that there was no error in admitting the testimony. The witness was testifying as to matters of appearance which were material facts as distinguished from conclusions and opinions.

■ Complaint is likewise made of the testimony of the witness D. L. Harris, who was asked the following questions, and gave the following answers:

"What was Prim's mental state of mind at that time, as you observed him, with reference to whether or not it was as had been? Answer: No difference."

"Mr. Harris, from your long acquaintance with Mr. Prim and your business connection with him, what has your observation and experience with him been with reference to whether he has always been a man of very positive opinions? Answer: Very positive."

"Was there any difference in Mr. Prim's acts and conduct at that time different to what it had always been previous years that you had known him? Answer: No, sir."

"I will ask you whether or not he was of that same positive way. Answer: Yes, sir."

Substantially the same objections were made to this testimony, but we are of opinion that same was admissible for the reasons above stated, as to the testimony of McDonald.

Being of opinion that there was no error in the action of the trial court in any of the respects complained of, such as to require a reversal, the judgment of the trial court should be reformed so as to give credit for the sum of $25, and, as so reformed, should be in all things affirmed, the costs of appeal to be adjudged against appellant. It is accordingly so ordered.

HICKMAN, C. J., disqualified, and not sitting.