## PRIM et al. v. FARMERS' NAT. BANK OF DUBLIN.

### No. 1505—5797.

Commission of Appeals of Texas, Section A.

Jan. 6, 1932.

Chandler & Keith, of Stephenville, and Levy & Evans, McLean, Scott & Sayers, and Glover C. Johnson, all of Fort Worth, for plaintiff in error.

Robert L. Thompson and W. J. Oxford, both of Stephenville, for defendant in error.

HARVEY, P. J.

This suit was brought by the defendant in error, the Farmers' National Bank of Dublin, against the plaintiffs in error S. H. Prim and others, to recover on four promissory notes, and to foreclose certain liens. The case was tried to a jury on special issues, resulting in a judgment for the bank on all four notes, with foreclosure as sought. The Court of Civil Appeals has affirmed said judgment. 28 S.W.(2d) 941.

As to two of the notes sued on, the Count of Civil Appeals reached a correct conclusion, and no useful purpose will be subserved in discussing them. We shall take up for discussion the questions which relate to the other two. One of these last-mentioned notes is for the sum of $4,154, and was executed by S. H. Prim and one M. Hoffman to the Citizens' National Bank of Dublin on December 1, 1927. Some time afterwards, the Farmers' National Bank took over the assets of the Citizens' National Bank, including this note. The defendant in error declared on this note as bearing interest from date. Prim pleaded specially "that said note has been wrongfully and fraudulently altered in a material part, and is therefore void, unenforcible and uncollectible, and that the defendant Prim was relieved from all liability thereon, in that in the face of said note, and under the terms thereof, the interest, thereon, was due from maturity of said note, and thereafter the plaintiff, its agents and servants, or some one acting for it, the name of whom is unknown to defendant, but well known to plaintiff, without the knowledge or consent of the makers thereof, materially altered and changed said note and the intent and purport thereof, in that the interest payment date was erased and stricken out, and there was inserted therein the word 'date' as a substitute for the word 'maturity.' As a result thereof the same was changed so that it now reads that the interest thereon was payable from date, which said alteration, change, erasure and substitution invalidates said note, and for the payment of which this defendant is not liable." The answer of defendant Prim was duly sworn to by him.

The note, as introduced in evidence, showed on its face that the printed word "maturity" had been scratched out, and that the word "date" interlined, thus causing the note to call for interest at the rate of 10 per cent. per annum from date. The record does not disclose that there was anything on the face of the note indicating when said change was made, with reference to the time the note was signed. The testimony of witnesses for the defendant in error was to the effect that this change in the wording of the note was made before the note was signed. Testimony in behalf of Prim was to the effect that the note, as executed, called for interest from maturity, and that neither of the makers consented to a change of the note in this respect. Prim requested that the following special issue be submitted to the jury: "Was the word 'maturity' in the $4154 note stricken out and the word 'date' written therein after said note was signed by S. H. Prim?" The trial court refused this request and, over the objection of Prim, submitted to the jury the following:

"Special Issue No. 1. Did the plaintiff bank, or its agents, servants or employees, or either of them, or someone acting for them, change the $4154 note herein sued on, by striking out the word 'maturity' and writing the word 'date' therein, after said note had been signed by S. H. Prim?"

Inasmuch as Prim specially pleaded, in effect, that the alteration was made by the plaintiff bank, or under its authority, his ground of defense is limited by such allegation. By special issue No. 1, the alleged fact of the alteration having been made by the plaintiff bank, or under its authority, was submitted to the jury, in the language of Prim's answer. Prim has no legal ground to complain in that respect. Nor did the trial court err in refusing the requested special issue; for said special issue, as framed, ignored the limitations of Prim's defense, as pleaded by him.

Another note involved in this suit is one for $10,000 executed by Prim to the defendant in error on June 18, 1928. This note was executed by Prim for a part of a pre-existing indebtedness due the bank by T. A. Lyon, the son-in-law of Prim. Prior to the time this note was executed, Lyon had forged certain bills of lading, purporting to cover shipments of cotton. Drafts drawn by Lyon, to which these bills of lading were attached, had been cashed by the defendant in error. Prim, as defenses to the $10,000 note, pleaded: (1) That the note was executed under duress of threats made by the officers of the bank to prosecute Lyon for his crime; and (2) illegality of consideration, in that the note was executed in consideration of the promise of the bank, through its officers, not to prose-

cute Lyon for the crime which he had committed. Respecting these defenses, the trial court submitted to the jury the following special issues:

"Special Issue No. 4. Prior to the execution and delivery of the $10,000.00 note herein sued on and exhibited in evidence before you, did the officers of the Farmers' National Bank of Dublin, Texas, or either of them, directly or indirectly, make a threat to the defendant Prim to prosecute the defendant's son-in-law, T. A. Lyon, unless the indebtedness of T. A. Lyon was fixed up? Answer yes or no."

The jury answered the above special issue, "Yes."

"Special Issue No. 5. If you have answered Special Issue No. 4, yes, then answer this special issue:

"Was the Defendant, S. H. Prim, induced to sign the said note, referred to in special issue No. 4, solely upon the threats, if any of said criminal prosecution? Answer yes or no."

The jury answered "No."

"Special Issue No. 6. At the time the defendant Prim executed and delivered to the plaintiff Bank the $10,000 note, herein, sued on, and exhibited in evidence before you, did he sign and deliver the same deliberately and of his own free will and accord, and without coercion on the part of the officers of plaintiff Bank, or either of said officers? Answer yes or no."

The jury answered "Yes."

"Special Issue No. 7. Did the officers of the plaintiff Bank know at the time they received the $10,000 note from S. H. Prim and delivered to him, S. H. Prim, or to T. A. Lyon, the drafts and bills of lading, exhibited in evidence, that T. A. Lyon was guilty of the commission of a felony in the handling of his cotton account with the plaintiff Bank? Answer yes or no."

The jury answered "Yes."

"Special Issue No. 8. If you have answered Special Issue No. 7, yes, then answer this special issue:

"Did the officers of the Farmers' National Bank of Dublin, Texas, or either of them, agree with S. H. Prim, not to prosecute or inform the officers of the law on T. A. Lyon in consideration of the defendant S. H. Prim's executing and delivery of the $10,000 note in question to the Bank? Answer yes or no."

The jury answered "No."

Putting aside the defense of duress set up by Prim, we take up for consideration the defense of illegality of contract. A note which is executed in consideration of a promise not to prosecute a person for crime is in contravention of public policy, as well as of our statutes (Penal Code, art. 428), and is therefore illegal. This is true, even though the illegal promise to forbear prosecution con-stitutes but a part of the consideration for the note. Wegner v. Biering, 65 Tex. 506. The undisputed evidence shows that Lyon, at the time the $10,000 note was executed by Prim, was indebted to the bank in a large amount. In answer to special issue No. 7, the jury found that the bank knew that Lyon had committed a felony. In answer to special issue No. 4, the jury found that the bank, through its officers, made a threat to Prim to prosecute Lyon for the crime he had committed, unless the indebtedness which the latter owed the bank was "fixed up." This threat necessarily implies a promise, on the part of the bank officials, that Lyon would not be prosecuted by the bank if said indebtedness was "fixed up." Prim, by executing the $10,000 note, accepted this implied offer to forbear prosecution; and an implied agreement in that respect was consummated. With said implied promise, on the part of the bank, established, the evidence in the case would leave no room for ordinary minds to draw any other conclusion than that such implied promise induced, to some extent, the action of Prim in executing the note. Prim, himself, testified that the moving cause of his executing the note was to protect Lyon from prosecution, and the attending publicity of the latter's disgrace. All the other evidence in the case, touching Prim's action in signing the note, shows that he had no other interest in the matter than such as arose from the fact that Lyon was his son-in-law. No reasonable inference can be drawn from the evidence that, in signing the note, he lost sight of the tendered promise of the bank not to prosecute Lyon. Turning now to special issue No. 8, it is to be observed that the jury found, in effect, that there was no agreement, such as we have discussed, made. This finding, under the circumstances of the case, contradicts the fact finding under special issue No. 4 and its legal consequences. For, as we have pointed out, the answer to special issue No. 4, taken in connection with the evidence in the case, would establish the fact, as a matter of law, that such an agreement was made. In this state of affairs, the trial court was not authorized to enter judgment in favor of either party in respect to the $10,000 note. We are not to be understood as overruling the objection made by the plaintiff in error to the form of special issue No. 8, or as holding that his requested special issue No. 11 was properly refused by the trial court. We do not find it necessary to pass on those matters.

We recommend that the judgment of the trial court, so far as it allows a recovery on the several notes sued on, except the note for $10,000, be affirmed, with instructions to the trial court to enter at the proper time such decree of foreclosure of attachment lien, and other proper orders, as may be necessary to enforce satisfaction. We further recom-

mend that in all other respects the judgment of the trial court and that of the Court of Civil Appeals affirming same, be reversed, and the cause be remanded.

### CURETON, C. J.

The judgment of the Court of Civil Appeals is in part affirmed and in part reversed, and remanded, with instructions as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.