## EVANS v. BEARD et al.
## No. 1245.

Court of Civil Appeals of Texas. Eastland.
March 9, 1934.

Rehearing Denied April 6, 1934.

Kilday & Howard and Heilbron, Cooper & Heilbron, all of San Antonio, for appellant.

Louie C. Arnett and Linden & Linden, all of San Antonio, for appellees.

LESLIE, Justice.

This is a suit by H. W. Evans, appellant, against A. J. Beard, Mrs. Mary J. Beard, his mother, and Mrs. Tracy Sipple, his mother-in-law, upon a promissory note for $5,306, dated April 23, 1930, payable to the order of J. D. Fussell, due one year after date, and executed by each of the defendants. On October 1, 1930, J. D. Fussell transferred the note without recourse on him "in any event" to the plaintiff, H. W. Evans. The defendants answered by demurrers, special denial that the plaintiff purchased said note for value before maturity; that the consideration for the same was illegal; and that its execution and delivery was obtained by duress. The trial was before the court and jury. The case was submitted on special issues, and judgment rendered thereon in favor of the defendant Mrs. Tracy Sipple. The plaintiff obtained a judgment against A. J. Beard and his mother, Mrs. Mary J. Beard, and they do not appeal.

In response to the special issues the jury found: (1) That appellant, H. W. Evans, was not a holder in due course; (2) that Youngs Crook was the agent of J. D. Fussell in securing the signature of Mrs. Tracy Sipple to the same; (3) that appellant did not purchase for value the note in suit; (4) that appellant on and prior to October 1, 1930, had actual knowledge of such facts concerning the execution of the note by Mrs. Tracy Sipple as to amount to bad faith in his taking it; (5) that Youngs Crook, while acting as the agent of J. D. Fussell, made the following·statements to, or in the presence of, Mrs. Tracy Sipple: (a) That A. J. Beard was being held on charges of forgery of a large number of pay checks which had been passed to J. D. Fussell; (b) that unless Mrs. Tracy Sipple promptly signed the note sued upon, A. J. Beard would go to the penitentiary; (c) that he, Youngs Crook, acting as a friend of A. J. Beard and of the entire family, would save

A. J. Beard by delivering the checks which constituted the only evidence against him, to the said A. J. Beard if Mrs. Tracy Sipple would sign said note; (d) that Youngs Crook was going to give A. J. Beard another position with the Public Service Corporation at the same salary, and, if Mrs. Sipple would sign the note, he would see that the salary checks were issued to Mrs. Beard and she could use them to repay her mother, Mrs. Tracy Sipple, for her loss sustained by payment of the note, and that the salary would soon repay Mrs. Sipple; (6) that each of the above statements was false; (7) that each of the above statements was material, and except for which statements Mrs. Sipple would not have signed the note in question.

After the testimony was all in, the plaintiff, Evans, moved for an instructed verdict, and upon the court's refusal to grant the same error is assigned on the ground that there is no evidence to warrant the submission of the case to the jury.

■ The testimony has been examined, and this court is of the opinion that it amply supports the finding of the jury in response to each issue. The statement of facts is long, and no attempt will be made to set out any portion of it in this opinion. The evidence is so conclusive that the plaintiff was not a holder of the note in due course that we shall not discuss that phase of the testimony. Neither can there be any doubt as to the sufficiency of the evidence to support the jury's finding in response to issue No. 2 to the effect that Youngs Crook was the agent of J. D. Fussell in procuring the signature of Mrs. Tracy Sipple to the note in suit. The fact of agency and authority in such cases may be established by circumstances. Wardlaw v. Pace (Tex. Civ. App.) 66 S.W.(2d) 350; 2 C. J. p. 438, § 34.

■ These conclusions have been reached after a careful consideration of the peculiar facts of this case. In substance, they present that J. D. Fussell, the payee in the note, was a money lender in the city of San Antonio where the San Antonio Public Service Corporation operated, having a number of employees, some of whom found it necessary to borrow money on their pay checks, or prospective pay checks. The defendant A. J. Beard was assistant chief pay roll clerk of said corporation, and entered into an agreement with Fussell whereby the latter was to furnish him funds to lend to said employees at the modest rate of 10 per cent. per month, and sometimes 10 per cent. every two weeks. The profits were to be divided equally from time to time between Fussell and Beard. This loan business ran along with a degree of success until it was discovered that Beard had been putting up with Fussell pay checks which were in fact forgeries, aggregating $5,306, which amount he had obtained from Fussell ostensibly for the purpose of making loans to the various employees. This discovery was followed by an effort on the part of Fussell and his employees to have the amount covered by a bankable note. In other words, by a note with solvent persons thereon. At this point Crook, also an employee of the Public Service Corporation, and a superior of the defendant Beard in that organization, became interested in the matter of the forged pay checks, and went to the office of Fussell to investigate the same. There he discussed with plaintiff, Evans, and E. A. Williams the details of the difficulty in which Beard was involved by reason of the foregoing facts. Present on that occasion was Glenn Beard, a brother of the defendant, and Hudgins, another employee of the service corporation. There is also some evidence that J. D. Fussell was present on that occasion. Evans, the plaintiff herein, is a "one-half first cousin" of J. D. Fussell, and had been in his employment since 1926 as office manager, bookkeeper, etc. Said Williams likewise had been in the employment of Fussell for a considerable length of time, keeping books, etc. Evans and Williams were both familiar with the transactions and matters leading up to and immediately preceding the execution by Mrs. Sipple of the note in question. They deny knowledge of any threats or duress practiced upon Mrs. Sipple to obtain her signature to the note. The evidence is at least conflicting in this respect. The idea of having Mrs. Sipple sign the note appears to have originated in Fussell's office and developed during the discussion of the matter by Evans, Williams, and Crook. Pursuant to the plans there conceived, said Crook was given the custody of the forged pay checks (which admittedly involved no liability on the part of his company) and with these he went to the home of Mrs. Sipple with the proposition that she should sign the note and thereby save the defendant Beard, her son-in-law, from being sent to the penitentiary on the charges indicated. Testimony is further to the effect that he gave her assurance that Beard would be retained in the service of the company at the same salary, but in a different position, thereby enabling him to pay off the note with his own earnings. This advantage and the grave danger of Beard's being sent to the penitentiary was, according to the testimony,

keenly pressed upon Mrs. Sipple at her home, and in the presence of her daughter who was confined to her bed with serious illness. There is evidence that Mrs. Sipple was a woman sixty-five years of age and in rather delicate health at the time she signed the note. There is also evidence to the effect that Crook and the other parties, in their effort to induce Mrs. Sipple to sign the note, entered uninvited into the sick room of her daughter and discussed the charges against her son-in-law, and held before them the possibility of the defendant Beard's being taken immediately to the penitentiary unless she signed a note and thereby forestall impending prosecution. There is further testimony to the effect that Crook assured Mrs. Sipple that the evidence of the forgeries would be delivered to the defendant, or some one for him, in the event the matter was closed up with the note. In accordance with this suggestion, Fussell, on receipt of the note, appears to have parted with the possession of the forged instruments.

Further details in this respect will not be stated, but the point here specially under consideration is the contention that there is no evidence that Youngs Crook was the agent of Fussell and Evans, or either of them, in obtaining Mrs. Sipple's signature on the note. The claim is made by the appellant that the activities of said Crook were prompted solely by his friendship for the defendant Beard and his family, and to aid him in his difficulty. This theory has been disposed of by the verdict of the jury, and further it appears that Youngs Crook's activities in the matter cannot easily be explained on any other theory than that he was acting for and in behalf of Fussell with a direct understanding of the situation gained in the office of the latter. If the idea and scheme for obtaining Mrs. Sipple's signature to the note did not originate with Crook, there is at least evidence warranting the conclusion that it originated in Fussell's office while he (Crook), the plaintiff, Evans, and Williams were in consultation about the matter just prior to his carrying to Mrs. Sipple the note and procuring her signature thereon in the manner indicated. Fussell and Crook did not testify in person or by deposition, and the evidence is that either Fussell, or those in charge of his business, Evans and Williams, placed the forged instruments in the hands of Crook, who took them to the home of Mrs. Sipple, and there, by the methods and means indicated, obtained from her the note bearing her signature. It appears he then, or thereafter, parted with

the pay checks evidencing the alleged forgeries. Under these circumstances it is believed that there can be no question about the sufficiency of the testimony to establish the agency and authority of Crook to acquire the note in behalf of Fussell.

In 2 C. J., p. 438, § 34, it is said: "The inference of an agency may be drawn from the facts, together with other circumstances, that one is put in possession of real property, given the custody or possession of instruments or other personal property, given a note to collect. * * *"

From the viewpoint of Mrs. Sipple, this record presents a very clear case of the execution of a note in consideration of a promise not to prosecute her son-in-law for a crime. Such an understanding is in contravention of public policy, as well as the Penal Code of this state, and, therefore, illegal. Prim v. Farmers' National Bank of Dublin (Tex. Com. App.) 44 S.W.(2d) 943.

Under the attack here made by the appellant that there was no evidence to carry this case to the jury, we have reviewed the statement of facts, giving to the same that construction most favorable to the appellee, as the law requires this court to do, and it is our conclusion that the trial court did not err in refusing to grant appellant's motion for an instructed verdict. What is here said necessarily overrules propositions 1 and 2.

Proposition 3 complains of the argument made by the appellee's attorney in that while presenting the case to the jury he made this statement: "If you answer question No. 1 'yes,' you need not answer the others, because you will thereby perpetuate the fraud practiced in securing this defendant's signature to the note." This argument was objected to on the ground that it was improper and told the jury the effect of the jury's answer to question No. 1. Upon this objection being made, the appellee's attorney, who used the language, immediately in open court withdrew the same, stating to the jury that it was not proper argument, and telling the jury, "You should not consider it." This, it occurs to us, rendered the statement harmless, and especially should it be so considered in the light of the court's qualification to the bill wherein he states that he proposes to instruct the jury not to consider the remark if the appellant's counsel so desired, but the proposal was declined by appellant's counsel on the ground that the harm had already been done. The language objected to appears to have been uttered when the judge was mo-

mentarily out of the courtroom. Not to regard this remark as harmless under the circumstances would be attributing to the jury such a small degree of common sense and fairness as to render the whole proceeding absurd. The proposition is overruled.

For the reasons assigned, the judgment of the trial court is affirmed as to Mrs. Sipple, and left undisturbed as to the other defendants. It is so ordered.