## TEXAS EMPLOYERS' INS. ASS'N v. MALLARD.

### No. 11625.

Court of Civil Appeals of Texas. Galveston.

May 3, 1944.

Rehearing Denied May 18, 1944.

382

Sewell, Taylor, Morris & McGregor, of Houston, for appellant.

Evan W. Burris, of Houston (Burris & Benton, of Houston, of counsel), for appellee.

GRAVES, Justice.

This appeal—in a compensation case—is from a $6438.49 lump-sum judgment in favor of appellee against appellant, as for the unpaid portion of compensation for a full period of 401 weeks, at the rate of $20 per week, for total incapacity, entered by the 55th District Court of Harris County, in part each upon a jury's findings on special issues submitted, the stipulations of the parties, and independent findings of the court itself from the record and evidence.

The stipulations were to the effect that, if the appellee showed himself entitled to recover for total and permanent disability, the rate of compensation should be $20 per week, and the whole should be paid in a lump sum.

The jury's findings in response to special issues Nos. 1 and 3 were that the appellee had suffered total and permanent incapacity from the injuries sued upon, and that he had not, nor would he, "suffer any partial incapacity to work as a result of the injuries, if any, sustained by him on August 25th, 1941, while in the employ of Tellepsen Construction Company."

It thus resulted that the only question of fact left to and determined by the jury was the extent and duration of the appellee's incapacity.

Appellant's points of error for a reversal are, in his verbis, these:

"1. The error of the court in defining the term 'total incapacity' in his charge to the jury as 'such disability as disqualifies a person from performing the usual tasks of a workman in such a way as to prevent him from procuring and retaining employment *in the usual occupation which he is suited to perform.'*

"2. The error of the court in permitting the plaintiff to testify on direct examination, over defendant's objection, that such was hearsay evidence, that Dr. E. M. Cowart, who had been treating him for the insurance company, had permitted him to go back to work 'at light duty'.

"3. The error of the court in failing to sustain defendant's timely objection to the unjustified and prejudicial argument of Evan Burris, plaintiff's attorney, in his closing remarks to the jury, as reflected in Defendant's Bill of Exception No. One."

None of these presentments, it is determined, in the state of this record, should be sustained.

It is true that the court in his charge to the jury defined "total incapacity" in the language used in appellant's first point, without, however, the italicizing it has added for emphasis to the conclusion thereof; but it also, in immediate sequence thereto, thus defined partial incapacity:

"By the term 'partial incapacity', as used in this charge, is meant that a person is disqualified from performing the usual tasks of a workman, but is capable of performing part of such usual tasks, or labor of a less remunerative class, whereby a reduction in earning capacity is suffered."

It then submitted both these issues to the jury, inquiring as to the first merely wheth-

er "the total incapacity, if any suffered by plaintiff, W. E. Mallard, is permanent, or was or will be temporary", and as to the second one, this:

"Do you find from a preponderance of the evidence that the plaintiff, W. E. Mallard, has suffered, or will suffer, any partial incapacity to work as a result of the injuries, if any, sustained by him on August 25th, 1941, while in the employ of Tellepsen Construction Company?"

The jury answered that the appellee's incapacity was total and permanent, and that he neither had suffered nor would suffer any partial incapacity.

In connection with whether he had suffered any partial incapacity, the court literally cross-examined the jury in some seven inquires as to every conceivable detail of any partial incapacity he might have suffered, directing it, however, to answer none of these extended specifications, in event they should first find he had suffered no partial disability.

■ As its quoted points imply, appellant makes no contention that the evidence failed to support any of the stated findings of either court or jury, so that such findings of both must be here regarded as reflecting the established facts.

Whatever inaccuracy of recitation there may be in the court's challenged definition of total incapacity, or in that of this court in its opinion in Texas Employers Ins. Ass'n v. Hitt, Tex.Civ.App., 125 S.W.2d 323, which appellant criticizes, it is not thought that—in the attending circumstances here—it amounted to such a denial of the rights of the appellant as were reasonably calculated to cause, and probably did cause, the rendition of an improper judgment herein, for these among other considerations:

■ (1) Appellant, at the time the court delivered it, did not tender a different or corrective definition, which the new rules seem to require in such circumstances. Wells Fargo & Co. Express v. Keeler, Tex. Civ.App., 173 S.W. 926; Franki's Vernon's Texas Rules of Civil Procedure, at page 295; Rule 279, Texas Rules of Civil Procedure.

■ (2) Whatever departure, if any, from correct form the italicized and criticized phrase in the trial court's definition of total incapacity may have constituted, that did not inhere in its fully-quoted definition of partial incapacity, which contained no such appendage; nor is it here complained of by the appellant.

(3) Whatever appellant's attitude toward it may have been, the issue of partial incapacity was thus emphasized by the trial court in all the referred-to details, which the jury read and considered necessarily in properly observing the court's charge; it, therefore, does not seem to reasonably appear that any improper judgment resulted from the challenged expression in the definition of total incapacity; especially since the jury, with all the lights before it, made the unequivocal finding, on what must be deemed sufficient evidence, that no sort of partial incapacity of whatever character had occurred.

■ Appellant's second point challenges the court's overruling of its objection to appellee's testimony—on his direct examination by his own counsel—with respect to Dr. Cowart, to this effect:

"Q. Did the doctor who was treating you for the insurance company permit you to go back to work at that time? A. Yes, sir, at light duty.

"Q. What kind of duty? A. Light duty.

"Q. Light duty?

"Mr. Morris: Your Honor, I object to that as hearsay testimony. He is quoting the doctor here. He asked him whether the doctor permitted him to go back to work, and he says, 'Yes, sir, on light duty'. He is quoting the doctor. It is hearsay testimony and I ask that it be stricken."

As the stated point and interrogation manifest, Dr. Cowart was the appellant's physician and was treating the appellee for it; in fact, the record also shows that in such capacity Dr. Cowart was still treating the appellee at the very time this challenged testimony relates to, and, in connection therewith, that the doctor had given him the specific order or direction that when he returned to work—evidently referring to that for appellee's employer at that time, the Tellepsen Construction Company—he should return to light duty. Whatever hearsay character there may appear on the surface in this testimony, being plainly a part of the treatment of him by the doctor, no reason occurs for not regarding it as a recognized exception to the hearsay rule. 17 Tex.Jur., par. 215, footnote 9, par. 245, page 589, footnote 20, and cited authorities.

The concluding point, complaining of remarks in appellee's closing argument to the

jury, is based upon an occurrence that is thus shown in the original bill of exceptions:

"Mr. Burris: Europe is in the greatest turmoil today that the world has ever been in. We in this country will be paying for this war for the next five hundred years, here, just because of things like Larry Morris was talking about, laughing at a poor man who is injured. * * *

"Mr. Morris: Your Honor, I don't believe that argument is justified.

"Mr. Burris: That is exactly why. * *

"The Court: Wait a minute, Mr. Burris.

"Mr. Morris: I didn't laugh at the man.

"Mr. Burris: If I have hurt Larry's feelings, I withdraw the statement. I thought Larry made light of his injuries. I still think so. I think it is serious. I think the future of our country depends on being fair to the laboring man or the working man or the producing man."

■ Subsequently, however, the trial court, pursuant to appellee's motion therefor, and as in compliance with Rule 428, Texas Rules of Civil Procedure, after the trial below had ended, and upon a finding on undisputed evidence to that effect, corrected—as having been an error of the court reporter—the recitation "Wait a minute, Mr. Burris", so as to read, "Withdraw that, Mr. Burris."

■ This court is bound by that correction, since it appears to have been made in strict accordance with that new rule in our Texas trial procedure. Such rule appears to have been taken from Federal Court Rule 75(h), 28 U.S.C.A. following section 723c, which the United States courts have held to be entitled to a liberal construction. Franki's Texas Rules of Civil Procedure, page 408, and footnote cited authorities.

■ Presumably also, the court having so directed Mr. Burris to withdraw the objected-to remarks, he did so. On that assumption, it is thought to follow that such prompt admonition of the court cured any error there may have inhered in the expression. Younger Brothers, Inc., v. Moore, Tex.Civ.App., 135 S.W.2d 780, 785; Phoenix Refining Company v. Morgan, Tex.Civ.

App., 178 S.W.2d 175, 178; Texas & New Orleans R. Co. v. Sturgeon, Tex.Sup., 177 S.W.2d 264; 41 Tex.Jur., 797; 64 Corpus Juris, 250; 41 Tex.Jur., 802.

■ Moreover, and intrinsically, the argument is not deemed to have gone beyond the bounds of excusable provocation from the immediately preceding remarks of appellant's counsel to the jury, to which it was a reply, as thus appears in the trial court's qualification of appellant's bill on this subject:

"Men, you are reasonable men. That is not right, to make that kind of claim. Now, he made more money than he had ever made in his life. Something happened then —you don't know what is was—caused a change in that man's life. Something brought on a change. The only evidence that I have of a change is the fact that he met Evan Burris on April 13, 1943, of this year. There was the change in his life. Up to that time he was going strong, making more money for himself and his family than he had ever made in his life. He met Evan Burris, an expert damage-suit lawyer, who, the record shows here, tried lots of damage suits and knows how it is done and knows what to do. Not only does he know how to try a lawsuit, but he has got a doctor friend that knows how to testify and pull, if necessary, over a jury's eyes. Mr. Mallard took good advice, to go through this ordeal in the courthouse."

■ The appellee, through this attorney of his own choice, had a legal right to litigate this cause in the court below, free from insinuations against the honor and integrity of either, or imputations of bad faith or crafty practices on their part; especially so, when both were by law presumptively of reputable character, in the absence in this record or either pleading or evidence tending to impeach them. Under these authorities, the rejoinder would not be reversible error anyway: 41 Tex.Jur., par. 62, page 781; Evans v. Beard, Tex.Civ.App., 70 S.W.2d 253, error dismissed; 41 Tex. Jur., par. 67, page 786.

These conclusions require an affirmance of the judgment; it will be so ordered.

Affirmed.