[No. 6081.]

LOMAX v. THE COLORADO NATIONAL BANK ET AL.

1. **Contracts—Public Policy—Consideration —** A promissory note given by the brother of an employee of a bank in consideration of a promise by the officials of the bank not to prosecute the employee for an embezzlement or defalcation, is void, and a pledge given to secure the note may be recovered; otherwise, if the sole consideration is the debt or liability of the employee to the bank.—(234)

2. Appeals—Conflicting Evidence — The findings will not be reviewed.—(235)

3. Agent—Vested with Insignia of Title to Principal's Goods —Wife authorizes her husband to procure to be issued in his own name, for a specified purpose, a certificate evidencing shares in a corporation which belong to her. He pledges the same without her consent, for a different purpose, the pledgee accepting them without notice of her rights. The pledge is valid and effectual as against the wife.—(236)

4. Words and Phrases—"Settlement," when used in connection with an ascertained debt or liability, means ."payment."—(236)

5. Payment—By Note of Third Person—The acceptance of the note of one person for the liability of another, with the intention, on the part of all parties, that it ·shall stand in lieu of the indebtedness or liability of the other, and discharge it, is a payment.—(237)

6. Promissory Note—Consideration—Where the promissory note of one person is executed and received in satisfaction of the debt of another, the indebtedness is a sufficient consideration. —(237)

7. Novation — The consent of the original debtor to the novation may be inferred from his conduct.—(238)

8. Estoppel—By Conduct—Wife owning stock in a corporation expressly authorizes the officers thereof to cancel the certificate and issue a new certificate to her husband. She is estopped, as against one who has dealt with the husband on the faith of his apparent title, to deny his title, even though she failed to subscribe the written authority upon the original certificate.—(239)

9. Cases Overruled, Distinguished and Explained—Currier v. Clark, 15 Col. App. 6, distinguished.—(237)

10. Statute Construed—The phrase "compensation for the private injury," in sec. 1293, Mills' Stats., indicates that, in the legislative mind, the liability of a thief for the stolen money is not, strictly speaking, a debt, but a liability for a tort.—(238)

*Error to Denver District Court*—Hon. P. L. Palmer, Judge.

Messrs. Whitford & May, for plaintiff in error.

Messrs. Bartels, Blood & Bancroft, for defendant in error.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

The relief asked of the court is a decree requiring the defendant bank to deliver up to the plaintiff, Mrs. Lomax, for cancellation, a certificate for fifty-four shares of the capital stock of The Flint-Lomax Electric and Manufacturing Company, which plaintiff says belongs to her, but which the bank unlawfully obtained and withholds and is about to sell and convert to its own use.

For the purposes of this case some of the material facts upon which the decision must rest are admitted. Other facts are in dispute. Alfred, the brother of plaintiff's husband, Fred, was a clerk in defendant's bank in Denver. He embezzled about $5,000.00 of its money. When confronted with the shortage, he admitted it and its amount. He was anxious to pay it, but was personally unable to do so. He was bonded by a guaranty company, and both he and his wife besought Mr. Kountze, the president of the bank, not to prosecute, and the latter said, particularly because of the wife's importunities, that he had no disposition to do so, but if the amount of the embezzlement was not paid Alfred would be turned over to the bonding company and, in any event, the offense would have to be reported to the bank examiner. Alfred suggested that his brother, Fred, might come to the rescue, and thereupon Fred, who was absent from Denver, was telegraphed for by Alfred to come home, that he was in trouble and that Mr. Kountze, the bank's president, wanted to see him, or for him to see Mr. Kountze. The witnesses differ about which one first mentioned sending for Fred. That, however, is not important. Alfred admits that he first spoke of aid his brother might give. Upon his return Fred had an interview with Mr.

Kountze and then first learned of his brother's crime, and was told that the bank wanted Alfred's liability paid, and if it was not, recourse would be had to the bonding company. At that interview Fred became angry and refused to aid his brother, but he intended to, and later did, see Mr. Kountze again about the matter. He does not claim that at the first conversation he made any promises to the bank or that the bank made any promises to him. As the result of a second, and possibly a third, interview between Fred, Mr. Kountze, and the vice-president and cashier of the bank, he gave to the bank his promissory note and secured it by a pledge of the sixty-five shares of stock, and accompanied the note and pledge with a letter in which he said that the note was "in settlement of the indebtedness of A. H. Lomax to your bank of the above amount." The plaintiff sues to recover this certificate upon the ground that it belonged to her and not to her husband, at the time he pledged it, and that she received no consideration therefor; that her husband was under duress at the time and that the only consideration for the note was the illegal promise of the bank not to prosecute the defaulter. The findings of the court upon all these issues were in defendant's favor.

1. Recognizing the general rule that a verdict of the jury, or findings of court sitting as a jury, upon conflicting evidence will not be set aside by a reviewing court, the plaintiff in this appeal from the judgment contends that the rule, as stated, does not govern here because the clear weight of the testimony, if not all of it, is against the findings. As to the material issues of duress and illegal consideration, plaintiff's husband is her only important witness. Upon that of duress his own testimony tends to show that he acted voluntarily and of his own free

will and was not coerced by any act, or threat, or conduct of defendant. Undoubtedly he was in mental distress and worried by the criminal act of his brother and wished to avoid the humiliation which publicity would bring to the family; but if his testimony tends to show that he gave his note to the bank because of a fear that if he did not his brother would be, and if he did his brother would not be, prosecuted, and that threats of a prosecution by the bank's officers overcame his will, their testimony is directly contrary to his. Again, while Fred's object may have been, in part, to avoid the disgrace of a criminal prosecution, the court, on substantial evidence, found that he was not under duress. As an intelligent business man, probably he believed that if he did not discharge Alfred's civil liability for his embezzlement, Alfred would be turned over to the bonding company, and the latter would, if required to pay, institute criminal proceedings. And rather than face such reasonable certainty he chose to wipe out the obligation with his own secured note and take chances of a prosecution by the government officials when the crime was reported to the bank examiner along with notice of payment of the shortage.

2. It is well understood law that a promise to compound any criminal offense is itself a crime and affords no valid consideration for a contract. Our statute upon this subject, 1 Mills' Ann. Stats., sec. 1293, while so providing, says: "but no person shall be debarred from taking his goods or property from the thief or felon or receiving compensation for the private injury occasioned by the commission of any such criminal offense." In *Giles v. De Cow,* 30 Colo. 412, it was said, "A thief is under a legal, as well as a moral, duty to repay the person whose property he has stolen, and it is not in itself an illegal contract for him to give his own obligation therefor, or for a

third party to agree to recompense the owner for the loss.'' If, therefore, the consideration for Fred's note, in whole or in part, was an agreement by the bank not to' prosecute, the note cannot be enforced, and the bank cannot retain the pledge; but if the note was given by Fred and received by the bank as compensation for the bank's private injury, in discharge of Alfred's civil liability, the note is enforcible and the pledge valid.

Upon the issue of the alleged illegal promise, the testimony is by no means all one way, as plaintiff argues. It is in direct conflict. Fred testifies that no agreement or promise on either side was made the first time he talked with the president of the bank, but that as the result of the second and third interviews, at which the vice-president and cashier were present, he gave his note and pledged the stock upon the sole and only consideration of the bank's promise made to him by the president not to prosecute his brother for the crime. On the other hand, the president and vice-president, who were there throughout, testify positively that no such promise was given by them, or exacted or suggested by him, and the cashier, who was absent part of the time, heard no such promise while he was present. The president testifies that he knew the legal consequence of such a promise and was careful throughout all of the interviews not to make or suggest any agreement whatever as to the criminal feature of the case, and expressly told Fred that while the bank desired to get its money, no promise would be given and also said that the bank would be obliged, under the law, to report the crime to the bank examiner, and that Alfred must take his chances as to a prosecution.

It is not necessary for us to review this evidence in detail to ascertain upon which side it preponderates. The trial court saw the witnesses and heard

them testify and, upon substantial and legally sufficient evidence, specially found upon this, as well as the other issues of fact, in favor of defendant. Under our established rule . we cannot interfere with its findings.

3.  In our view it is immaterial whether plaintiff, as between herself and husband, was the owner of the pledged stock. She is not in a position to raise any such question in this action, as agaiust defendant. According to the positive allegations of her complaint and her own testimony, she was the owner of one-half of the capital stock of the Flint-Lomax Company, 249 shares of which were included in one certificate in her name. Her husband represented to her that it was necessary to borrow money in behalf of the company and to pledge stock as security for the loan. She gave him this certificate and for such purpose authorized him to have the same canceled and delivered up to the company and to have sixty-five shares of it issued to him, which was done. Being thus given possession of the stock, with the usual *indicia* of ownership, the certificate being in his name, she says he used the certificate for another and different purpose. The bank officers all testify that at the time they received the pledge of the stock they did not know that it belonged to the plaintiff, but supposed that it was the property of the husband in whose name it was. If, as she says, her husband violated the trust, she must look to him for redress, for the bank was justified in dealing with him as the true owner.—*Supply Ditch Company v. Elliott,* 10 Colo. 327. Of course, if Fred's note is void because of duress or lack of consideration, the pledge of the stock was also void and she would be entitled to its return; but since we have been obliged to hold that the note was not so tainted, the pledge is valid.

4. Plaintiff further argues that, even if the note was not given as the result of the bank's promise not to prosecute, it has no other consideration whatever. Her position is that the note, though given in "settlement" of the defaulter's indebtedness to the bank, was not a payment or discharge of that debt. She invokes the rule announced in *First National Bank v. Newton*, 10 Colo. 161, 172, and *Zook v. Odle*, 3 Col. App. 87, which is that where the note of a debtor, or of a third person, is given for an antecedent debt the legal presumption is that the antecedent debt is not paid unless the subsequent note itself is paid at maturity. Such is the doctrine, but it has no application to this case, assuming that the antecedent debt was thereby paid.

"Settlement" has different meanings. It may mean an ascertainment or adjustment of a disputed account; it also means payment. When used in connection with an ascertained debt or liability it unquestionably means payment. It is entirely clear that in plaintiff's letter accompanying his delivery of the note to the bank "settlement" was used in the sense of "payment."—*Stewart v. Union Mu. L. Ins. Co.*, 155 N. Y. 257-266. But if, as a matter of law, it was not so used, and its meaning is uncertain, the evidence removes all doubt and abundantly shows that Alfred's intention was to have his brother, as is differently expressed in the record, make good, or secure, or pay, or come to his rescue with the bank, and that it was Fred's intention to give, and the bank's intention to take, this secured note in full payment and discharge of Alfred's original debt. Indeed, the record clearly manifests this when opposing counsel, in their examination and cross-examination of witnesses, assume that the intention and agreement of the parties was that the secured note should wipe out and discharge the original debt, and

the questions and answers amply substantiate this view.

While it is true that the mere taking of the note of the debtor, or that of a third person, for an antecedent debt is not payment of the latter, yet where that is the intention of the parties and their agreement, such effect is given to it.—*Gandolfo v. Appleton,* 40 N. Y. 533; *Waters v. Creagh,* 4 Stew. & P. (Ala.) 410; *Wilson v. Stilwell,* 9 Ohio St. 467; *Goenen v. Schroeder,* 18 Minn. 66; *Curtis v. Egan,* 53 N. H. 511; *McKinney v. Statesman Publishing Co.,* 34 Ore. 509; *People v. Green,* 5 Daily 194; *Auzerais v. Naglee,* 74 Cal. 60; *Pentz v. Pa. Fire Ins. Co.,* 92 Md. 444.

Plaintiff cites the case of *Currier v. Clark,* 15 Col. App. 6, as decisive of this. We do not perceive its pertinency to the facts of this case as found by the trial court. There it was held that a note to pay the debt of another, not executed at the time of the original debt, must be based upon some new and valid consideration. Assuming that to be the law, it is inapplicable here, because, as we have already determined, Fred's note was given in payment and discharge of Alfred's pre-existing liability, and by the established law of this state this is a sufficient consideration.—*Bank v. McClelland,* 9 Colo. 608; *McMurtrie v. Riddell,* 9 Colo. 497; *Knox et al. v. McFarran,* 4 Colo. 586; *Murphy, Receiver, etc., v. Gumaer,* 12 Col. App. 472. Thus far in considering the argument of plaintiff's learned counsel on this branch of the case we have proceeded upon their assumption that Alfred's liability to the bank was a debt in the ordinary sense of the term. It may be, though we do not so decide, that so far as concerns the question involved here, it is to be so treated. Our statute, however, uses the words "compensation for the private injury," which indicates, in the legis-

lative mind, that the civil liability of a thief to the owner of property which he has stolen, is not, strictly speaking, a debt; that is, a debt arising out of contract; but a liability incurred in consequence of a tort committed. This phrase, taken in connection with the distinction that is frequently made between debt and liability, at least furnishes some ground for defendant's argument that the doctrine applicable to contract debts, which plaintiff invokes, is not pertinent to a thief's civil liability to the owner of stolen property.—*Arapahoe County v. Fidelity Savings Association*, 31 Colo. 47; *Troy Laundry & Machinery Co. v. Denver*, 11 Col. App. 368; *Hill v. Graham*, 11 Col. App. 536; 18 Am. & Eng. Enc. of Law (2d ed.) 846; 8 Am. & Eng. Enc. of Law (2d ed.) 982; 13 Cyc., p. 393 *et seq.*

Plaintiff also claims that the doctrine of novation applies, and since, as she says, there is no evidence that Alfred expressly consented or agreed that his debt to the bank might be discharged by the giving of Fred's note, it is still an existing obligation against him. The complaint does not present any such issue. Even if plaintiff's evidence tends to show that Alfred did not expressly consent to his discharge, all the other evidence in the case tends strongly to prove that the very object which he had in his single interview with the president of the bank was, through Fred, to make payment of his liability to the bank and compensate it for the private injury which it sustained. The finding of the court, upon conflicting evidence, justifies the conclusion that, if the doctrine of novation applies, it is entirely satisfied by the evidence.

There is another point which plaintiff makes, which is that the bank is charged with knowledge of her ownership of the pledged stock, because its attorney, when he noted on the stub of the stock certificate

book the fact that it was pledged as collateral, knew that the blank power of attorney, or written authority, on the original certificate had not been signed by her. If she did not sign this written authority, we do not consider it important or material here. In her complaint, which is supported by her own testimony, she positively says that she caused her original certificate to be canceled and surrendered to the company and authorized her husband, as her agent and representative, to have this done and new certificates issued in lieu thereof. Her authority to the officers of the company, of which her husband was secretary, to cancel the old, and issue the new, certificate, estops her now to complain, even if the fact is material, that she did not sign the blank authority which was on the original. We have already held that if her husband abused his trust and used the stock for an unauthorized purpose, which was not known to the bank, that fact does not entitle her to the return of the certificate even if it does belong to her.

The foregoing disposes of all the arguments advanced by the plaintiff upon this review which are entitled to, or merit, consideration. Most careful examination of this record fails to disclose that any prejudicial error was committed by the trial court. Its judgment is therefore affirmed.    *Affirmed.*

Mr. JUSTICE MUSSER and Mr. JUSTICE HILL concur.