## WARD v. WARD et al.
## No. 2439.

Court of Civil Appeals of Texas. Beaumont.
Feb. 8, 1934.

Rehearing Denied Feb. 21, 1934.

Benckenstein & Carrington, of Beaumont, for appellant.

Smith, Smith & Boyd and J. L. C. McFaddin, all of Beaumont, for appellees.

O'QUINN, Justice.

Appellant, John C. Ward, Jr., brought this suit in the Fifty-Eighth district court of Jefferson county, against appellees, H. L. Ward, Wesley Kyle Ward, Jack S. Ward, Carroll E. Ward, Mrs. Nena Ward Martin and her husband, H. E. Martin, Mrs. Seawillow Ward Stafford, a feme sole, Mrs. E. B. Kelso and her husband, E. B. Kelso, Marshall King Ward, J. H. McCorkle, Mrs. Eva McFarland Lentz and her husband, L. L. Lentz, Mrs. Belle Carroll Ward, a feme sole, Paul Tullos, W. M. Carroll, and the First National Bank of Beaumont, Tex., to cancel and annul the following instruments: (1) A certain deed from said John C. Ward, Jr., said Wesley Kyle Ward, said Jack S. Ward, said Carroll E. Ward, and said J. H. McCorkle, by them executed and delivered to said H. L. Ward, conveying their respective undivided interests in the J. C. Ward estate and in the properties of said estate; (2) a pledge of certain shares of corporate capital stock formerly belonging to said John C. Ward estate made by said H. L. Ward to said W. M. Carroll; (3) a deed of trust covering certain lands formerly belonging to the said John C. Ward estate and delivered by the said H. L. Ward and the said Mrs. Belle Carroll Ward to said Paul Tullos for the benefit of said First National Bank; (4) a certain trust agreement made by and between the owners of undivided interests in said John C. Ward estate and said H. L. Ward. And for grounds alleged: (a) That said instruments were executed and delivered for an unlawful purpose and consideration; (b) were in contravention of the public policy and the statutes of the state of Texas; (c) and same were executory, unperformed, and that appellant, John C. Ward, Jr., was not in pari delicto with said appellees, or any of them.

Appropriate answers were filed by the several defendants, which were replied to by supplemental petition of appellant. At the conclusion of the testimony, an instructed verdict was returned in favor of defendant W. M. Carroll. The case was then submitted to a jury upon special issues, upon the answers to which judgment was rendered in favor of appellees.

As reflected by the record, this suit originated out of the following matters: Wesley Kyle Ward, a brother of most of the appellees, was an officer of the First National Bank of Beaumont, one of the appellees, and was found to be short with the bank in the sum of about $65,000. This defalcation was made known to the appellees, members of the Ward family, by Wesley Kyle Ward himself, and said appellees immediately called a family conference to discuss the matter and determined to make good the shortage. H. L. Ward, one of the brothers, was in Chicago,

and was called by long distance telephone and immediately prepared to come to Beaumont. Prior to his arrival, C. E. Ward, another of the brothers, took the initiative in the matter and at once went to see P. B. Doty, president of the First National Bank, in relation to making good the shortage, telling Doty that the Ward family desired to make restitution in full. Wesley Kyle Ward's liability to the bank was covered by a surety company bond in the sum of $50,000. In the course of the discussion of the matter, Mr. Doty told C. E. Ward that unless the defalcation was made good within ten days, the time required in the bond for notice of any shortage on the part of the assured, the bank would have to and would report the shortage to the surety company, and that in any event the bank would have to report the shortage to the bank examiner. H. L. Ward arrived, and after other family consultations, it was determined to arrange with the bank to fully cover the defalcation. C. E. Ward went on with the preparations to carry out the arrangement which culminated in the execution of the various instruments herein sought to be canceled. After the execution of said instruments, H. L. Ward, as trustee of the properties affected, executed a note to the bank securing the balance of the shortage not covered by cash payments and a deed of trust upon certain property of the estate to secure the payment of said note; whereupon the bank, although having had to notify the bonding company in the meantime, made no claim against the bonding company, but relied upon the note against the Ward estate executed by C. E. Ward, as aforesaid. The bank had also duly notified the bank examiner of the shortage. Wesley Kyle Ward was thereafter indicted and tried in the Federal District Court, and received a four-year suspended sentence. After this trial, on May 7, 1932, H. L. Ward and the other members of the family entered into a declaration of trust wherein the property of said Ward estate was conveyed to said H. L. Ward in trust, and in which said instrument the agreements, in regard to the trust, were fully set forth, showing that the trust was to terminate as soon as the indebtedness incurred was paid, and that each member was to receive his proportionate share of the remainder of the property. This trust agreement was executed by all of the parties, including plaintiff John C. Ward, Jr., after considerable discussion and redrafting its terms so as to meet the approval of all the parties executing it, and, as before stated, after the indictment, trial, and conviction of Wesley Kyle Ward.

This suit was filed by John C. Ward, Jr., after all the above matters were agreed to and the instruments executed and delivered, for the purpose of canceling and annulling the said instruments, to wit, the deed he executed to H. L. Ward, the declaration of trust, which was subsequently executed in regard thereto, and the note and deed of trust to the bank, executed by H. L. Ward, as trustee, based upon allegations of duress and undue influence, which he claimed the other appellees, members of the Ward relationship, and especially H. L. Ward and C. E. Ward, exerted upon him, whereby he was caused to sign the deed of October 31, 1931, in which he conveyed his interest in the Ward estate to H. L. Ward, along with the other Ward heirs owners of interests in said estate; and also on the ground that the transaction was an illegal transaction because of an alleged agreement of the First National Bank not to prosecute Wesley Kyle Ward in case the deeds were made.

The case was tried to a jury. There were twenty-seven special issues submitted, only eight of which were answered, the answers to which, under the charge of the court, rendered the other issues immaterial, and were not to be and were not answered. Those answered were:

Issue No. 1. "Do you find from a preponderance of all the evidence that prior to the execution and delivery of the deed of trust, exhibited in evidence before you, the officers of the First National Bank of Beaumont, Texas, or either of them, expressly or impliedly, made a threat to Carroll E. Ward and H. L. Ward, or either of them, to prosecute Wesley Kyle Ward unless the money which Wesley Kyle Ward had embezzled was paid back to said bank or unless arrangements were made to pay said money back to said bank?" The jury answered: "No."

Issue No. 6. "Do you find from a preponderance of all the evidence that prior to the execution and delivery of the deed from John Ward, Wesley Kyle Ward, Jack S. Ward, Carroll E. Ward, and J. H. McCorkle, to H. L. Ward, which has been exhibited in evidence before you, the officers of The First National Bank of Beaumont, Texas, or either of them, expressly or impliedly, made a threat to Carroll E. Ward and H. L. Ward, or either of them, to prosecute Wesley Kyle Ward unless the money which Wesley Kyle Ward had embezzled was paid back to said bank, or unless arrangements were made to pay said money back to said bank?" The jury answered: "No."

Issue No. 11. "Do you find from a preponderance of all the evidence that Wesley Kyle Ward, Jack S. Ward, Carroll E. Ward and J. H. McCorkle, were induced to sign and deliver the deed, referred to in Issue No. 6, partly because of the threats, if any, to prosecute Wesley Kyle Ward?" The jury answered: "No."

Issue No. 16. "Do you find from a preponderance of all the evidence that, prior to the execution and delivery of the deed from John Ward, Wesley Kyle Ward. Jack S. Ward. C. E. Ward, and J. H. McCorkle, to H. L. Ward, which has been introduced in evidence before you, the officers of The First National Bank of Beaumont, Texas, or either of them, expressly or impliedly, promised C. E. Ward and H. L. Ward, or either of them, that, if the monies embezzled by Wesley Kyle Ward were paid back to said bank, or if arrangements were made to do so, said bank would not prosecute Wesley Kyle Ward?" The jury answered: "No."

Issue No. 21. "Do you find from a preponderance of all the evidence that at the time John Ward, the plaintiff, executed and delivered the deed to H. L. Ward, which has been exhibited in evidence before you, he was induced thereto by duress upon the part of his half brother, Carroll E. Ward, as alleged in plaintiff's second amended original petition?" The jury answered: "No."

Issue No. 22. "Do you find from a preponderance of all the evidence that at the time John Ward, the plaintiff, executed and delivered the deed to H. L. Ward, which has been exhibited in evidence before you, he was caused to do so by the exercise of undue influence upon the part of his half brother, H. L. Ward, as alleged in plaintiff's second amended original petition?" The jury answered: "No."

Issue No. 23. "Do you find from a preponderance of all the evidence that Wesley Kyle Ward, Carroll E. Ward, J. H. McCorkle, and Jack S. Ward, had signed and delivered the deed from said parties to H. L. Ward, prior to the time that John Ward, the plaintiff, executed and delivered said deed?" The jury answered: "No."

Issue No. 24. "Do you find from a preponderance of all the evidence that Mrs. Belle Carroll Ward and H. L. Ward executed and delivered the Deed of Trust, which has been exhibited in evidence before you, prior to the time that John Ward, the plaintiff, executed and delivered the deed to H. L. Ward which has been exhibited in evidence before you?" The jury answered: "No."

Upon the return of the verdict, plaintiff, appellant, moved for an instructed verdict in his favor non obstante veredicto. This was refused and judgment rendered for appellees, that appellant take nothing and that appellees go hence without day. Motion for a new trial was overruled, and the case is before us on appeal.

Appellant's several contentions that the instruments in-question were executed because of threats by the First National Bank to prosecute Wesley Kyle Ward for embezzlement unless the money embezzled was paid back to the bank, or arrangements made to pay same to the bank, are overruled. The question of threats, either expressly or impliedly, by the bank was submitted to the jury, as shown by special issues Nos. 1, 6, and 11, supra, and found by them not to have been made. We have carefully considered all of the evidence and do not find any evidence to support appellant's contention. The record shows no evidence of any threat by the bank or any of its officers to prosecute Wesley Kyle Ward because of his embezzling the money of the bank, unless the embezzled money was paid back to the bank, or arrangements made to pay same. No character of threats by the bank is shown.

We likewise overrule appellant's contention that he was induced to execute the deed sought to be canceled because of duress by his brother Carroll E. Ward exercised upon him at and before the time of the execution of said deed. This question was submitted to the jury, and they found against appellant's contention. The evidence fully supports this finding.

Also we overrule the contention of appellant that he executed and delivered the deed to H. L. Ward because of undue influence exerted over him by his said brother H. L. Ward. This question was submitted to the jury and by them found against appellant. The evidence amply supports this finding.

The contention that the deed executed by himself and other Ward heirs to H. L. Ward in order to arrange for the payment to the First National Bank of the money embezzled from said bank by Wesley Kyle Ward, was upon the promise of the officers of said bank that, if the embezzled money was paid back to the bank or arrangements made for such payment, said bank would not prosecute said Wesley Kyle Ward for such embezzlement, is without support in the evidence. This question was submitted to the jury and they found that no such promise, either express or implied, was made, and this finding,

we think, is in accordance with the undisputed evidence.

By various propositions, appellant vigorously urges that the instruments sought to be canceled and annulled were executed in the furtherance of an illegal transaction, against public policy, and based upon an illegal consideration, and therefore his motion for judgment non obstante veredicto should have been granted. He insists that this is true as appears, he says, from the undisputed evidence, and that he was not in pari delicto with the other parties to said instruments.

As appears from the statement supra of the matters leading up to the execution of the instruments sought to be canceled, Wesley Kyle Ward was an officer of the First National Bank of Beaumont, Tex., and about October 26, 1931, was found to be short with the bank in the sum of about $65,000. This defalcation was made known to the members of the Ward family by Wesley Kyle Ward himself. Appellees Jack S. Ward and Wesley Kyle Ward were full-brothers of the plaintiff John C. Ward, Jr., and appellee Mrs. Eva McFarland Lentz was the wife of another full-brother, Dalton Ward, deceased. Appellees H. L. Ward, Carroll E. Ward, Marshall King Ward, Mrs. Nena Ward Martin, Mrs. Seawillow Ward Stafford, and Mrs. E. B. Kelso were the half-brothers and half-sisters of plaintiff, and appellee J. H. McCorkle the surviving husband of a deceased half-sister of appellant.

When Wesley Kyle Ward made known his shortage to the bank to his said relatives, a family conference was immediately called to discuss the matter, and it was determined to make good the shortage. Carroll E. Ward took the initiative in the matter and immediately went to see P. B. Doty, president of the First National Bank, in relation to making good the shortage, telling Doty that the Ward family desired to make restitution in full. Wesley Kyle Ward's liability to the bank was covered by a surety company to the amount of $50,000. In the discussion of the matter Mr. Doty told C. E. Ward that unless the defalcation was made good within ten days, the time required by the surety bond for notice of any shortage on the part of the assured the bank would have to and would report the shortage to the surety company, and that in any event the bank would have to report the shortage to the bank examiner. He further told C. E. Ward that he (Doty) personally felt kindly toward Wesley Kyle Ward, but that he could not make any promise for the bank as to any action it might take in the matter, that no such promise could or would be made. After several consultations by the Wards among themselves and with the bank officials, it was made known that the Ward family preferred to deal directly with the bank rather than to take up the matter with the surety company. Mr. Doty told them that if the defalcation was made good within the ten days that it would not be necessary for the bank to report the shortage to the surety company. It was then determined by the Wards to arrange to pay the shortage, and the execution of the instruments in question followed. The note to the bank for the balance after money payments, and the deed of trust to secure its payment, were accepted by the bank in discharge of the matter, and it then looked wholly to the payment of said note and its security by the deed of trust for the debt, and made no demand upon the surety company. However, in the course of the events the bank deemed it necessary to and did report the matter of shortage to the surety company, but the surety company took no part in or in any way acted in the adjustment of the matter as between the Ward family and the bank. The bank properly notified the bank examiner of the shortage.

Appellant, along with all the other heirs to the ward estate, executed the deed of date October 30, 1931, to H. L. Ward placing the properties of said Ward estate in said H. L. Ward's hands in order that he might the better carry out the plan for assuming to pay and to make good their brother Wesley Kyle Ward's defalcation. The note to the bank was then executed on October 31, 1931, by Mrs. Belle Carroll Ward, the wife of John C. Ward, Sr., deceased, H. L. Ward, C. E. Ward, and Wesley Kyle Ward in the sum of $30,000, the remainder of said shortage having been paid in cash, and the deed of trust covering the properties of said Ward estate (estate of John C. Ward, Sr., deceased) was on said date executed by said H. L. Ward joined by Mrs. Belle Carroll Ward, wife of said deceased John C. Ward, Sr., and accepted by said bank. And the bank then looked to the payment of said note together with the enforcement of said deed of trust if necessary, for the payment of said money, and not to any other source.

Following the above-outlined settlement with the bank of the shortage of Wesley Kyle Ward, the trust agreement in question was executed on May 7, 1932, by the Ward heirs, including plaintiff John C. Ward, Jr., and the other heirs, appellees, agreeing to and providing for the distributing among said heirs of

the remainder of the Ward estate after said note had been paid. This instrument was executed after Wesley Kyle Ward had been indicted, tried, convicted, and sentenced, as stated supra.

■ Appellant, by various propositions, urges the contention that he was entitled to a judgment non obstante veredicto, because, he says, the consideration for the execution of the instruments sought to be canceled and annulled was illegal, against public policy, and in violation of the statutes of the state.

This contention is based upon the insistence that the undisputed evidence shows that the consideration for the execution of said instruments was the promise of the bank not to prosecute Wesley Kyle Ward for the embezzlement of its funds; that is, that if the money of the bank which had been embezzled by Wesley Kyle Ward was paid back to the bank, or if satisfactory arrangements were made to pay said money, he would not be prosecuted by the bank. Each of the Wards that had been in consultation with the officers of the bank testified that no such promise was made by any one. The Wards initiated the conferences, and suggested the method of settlement, not the bank. It is without dispute that Mr. Doty, president of the bank and with whom the conferences relating to the settlement were had, at all times told the Wards that he could not and would not make any promise for the bank as to not prosecuting Wesley Kyle Ward; that so far as he personally was concerned he would like to see the matter dropped, but that he couldn't make any promise for the bank. He further told them, they all say, that the bank would do its duty in compliance with and under the law, and would report the defalcation to the bank examiner, and that if the money was not paid back, it would have to report the shortage to the surety company within ten days. The record shows that report was duly made to the surety company and to the bank examiner by the bank. Wesley Kyle Ward was indicted by the federal court, was tried, convicted, and given a four years suspended sentence.

Appellant was not present in any of the conferences with the officers of the bank, but says that he understood from statements made to him by his brothers who had participated in said conferences that such promise was made or understood. This they each unequivocally denied. The record fails to show any such. But appellant says that the undisputed evidence shows, at least, an implied promise on the part of the bank officials not to prosecute if the money was paid back, or if satisfactory arrangements were made to pay same, and argues that the facts of the conferences, the consequent execution of the instruments, the acceptance by the bank of the proposed arrangements for payment, show the understanding not to prosecute. This question was submitted to the jury and they found against appellant's contention, and the record abundantly supports this finding.

The Ward heirs, other than appellant, vigorously sought to repay the money to the bank because they said they wished to maintain the good name and reputation of the family inherited from their deceased father, and because they thought it right and proper to repay to the bank the money their brother had embezzled from it. They were actuated by the highest motives of honor and pride, and, as reflected by the record, made no demand, nor exacted any promise from the bank not to prosecute their brother in the event the defalcation was made good. They hoped, so they said, that by making the shortage good, it might be made lighter on their brother in the sentence of the law, which they knew and realized would have to be invoked. Also it seems clear to us that the bank accepted the note and its security, not as a consideration to not prosecute Wesley Kyle Ward for embezzling its funds, but as compensation for and in discharge of the stolen money in discharge of his civil liability to the bank. 6 R. C. L., Contract, § 170.

■■ In order for a transaction to be void as against public policy, as being in violation of article 428 of the Penal Code, or as tending to compound crime, there must be an agreement, express or implied, between the parties to such transaction, that the prosecution, anticipated by the parties, will be suppressed by one of the parties to the transaction; and a conveyance by one of the parties to the other with the mere hope that such conveyance may avoid the prosecution of the offender, or mitigate the punishment, in case of prosecution, is not sufficient to make such transaction, based upon such hope, an illegal transaction; it being legal in all other respects. 6 R. C. L., Contract, § 170, pp. 763, 764; Lomax v. Colorado Nat. Bank, 46 Colo. 229, 104 P. 85; Board of Education v. Angel, 75 W. Va. 747, 84 S. E. 747, L. R. A. 1915E, 139; Ogden v. Ford, 179 Cal. 243, 176 P. 165; Murray Showcase & Fixture Co. v. Sullivan, 15 Cal. App. 475, 115 P. 259; Hunt v. Hunt, 67 Or. 178, 132 P. 958, 134 P. 1180; Moog v. Strang, 69 Ala. 98; Ward v. Allen, 2 Metc. (Mass.) 53, 35 Am. Dec. 287; Higgins v. Sow-

ards, 159 Ky. 783, 169 S. W. 554. See 32 A. L. R. p. 422, and L. R. A. 1915E, 139, and L. R. A. 1915D, 1118, where numerous cases are annotated.

The case of Lomax v. Colorado National Bank, supra, is on all fours as to the facts, and involved the same questions of duress and illegality of transaction, as in the instant case. Also the case of Board of Education v. Angel, supra, is quite similar as to the facts and questions of law as the instant case. Cases more directly in point we do not think could be found.

The case of Prim v. Farmers' Nat. Bank of Dublin (Tex. Com. App.) 44 S.W.(2d) 943, cited by appellant, and upon which he strongly relies, we do not think to be in point. In that case the bank sued Prim to recover on a note in the sum of $10,000. This note was executed by Prim for a part of a pre-existing debt due the bank by T. A. Lyon, the son-in-law of Prim. Prior to the time the note was executed, Lyon had forged certain bills of lading, purporting to cover shipments of cotton. Drafts drawn by Lyon, to which these bills of lading were attached, had been cashed by the bank. Prim, as defenses to the note, pleaded: (1) That the note was executed under duress of threats made by the officers of the bank to prosecute Lyon for his crime; and (2) illegality of consideration, in that the note was executed in consideration of the promise of the bank, through its officers, not to prosecute Lyon for the crime which he had committed. In answer to a special issue, the jury found that *the bank through its officers made a threat to prosecute Lyon for the crime he had committed, "unless the indebtedness which he owed the bank was fixed up."* Upon this finding, the court said: "This threat necessarily implies a promise on the part of the bank officials, that Lyon would not be prosecuted by the bank, if said indebtedness was 'fixed up.'"

In the instant case, in answer to special issues, the jury specifically found that the officers of the bank made no such threat, and further that no promise on the part of the bank not to prosecute was made. The facts in the two cases and the findings upon the facts are entirely different as relating to threats or promises, and, so, the cited case is not applicable. We do not deem it necessary to discuss the numerous other authorities cited by appellant as bearing upon this feature of the case, but think them all easily distinguishable upon the facts, as well as the issues involved and determined.

■ Threats to prosecute, promise not to prosecute, duress, and undue influence, were all pleaded by appellant as grounds for the cancellation of the instruments he sought to nullify. The burden was upon him to support these allegations with evidence. Each of these questions was submitted to the jury, and each of them found by the jury against him. As we have before said, the record abundantly supports each and all of these findings, and thus negatives the right of appellant to recover on the facts.

■ Moreover, there is another reason why appellant should not have judgment. If it were true, which according to the findings of the jury, and the great weight, if not the undisputed evidence, it is not, that the execution of the instruments in question was for an illegal purpose and contrary to law, nevertheless all the evidence shows that appellant perfectly understood the matters and things inducing the execution of the instruments, and forming the consideration for their execution, and thus knowing, joined in their execution, and, therefore, was in pari delicto in the wrong, if, as he contends it to be, that was thus consummated. That being true, under the law he cannot have judgment, but must be left as we find him. 10 Tex. Jur., Contracts, § 136, pp. 233–237, and authorities cited; Beer v. Landman, 88 Tex. 450, 453, 31 S. W. 805; Donley v. Tindall, 32 Tex. 43, 53, 5 Am. Rep. 234; Nunn v. Lackey, 1 White & W. Civ. Cas. Ct. App. § 1331; New Century Mfg. Co. v. Scheurer (Tex. Com. App.) 45 S.W.(2d) 560; Trinity National Bank v. Gates (Tex. Civ. App.) 261 S. W. 863; Montgomery Ward & Co. v. Lusk (Tex. Civ. App.) 52 S.W.(2d) 1110; Wright v. Wight & Wight (Tex. Civ. App.) 229 S. W. 881.

All assignments presented by appellant have been considered and none of them show error, and they are overruled. The judgment should be affirmed, and it is so ordered.

Affirmed.

COMBS, J., not sitting.