In re Bruce S. HINKLEY, Debtor.

H.Y. ROBINSON, Sr., et al.

v.

Bruce S. HINKLEY.

Civ. A. No. H–87–3712.

United States District Court,
S.D. Texas,
Houston Division.

Aug. 18, 1988.

Alvin A. Horne, Houston, Tex., for H.Y. Robinson, Sr.

Rhett G. Campbell, Houston, Tex., for Bruce S. Hinkley.

## MEMORANDUM ON APPEAL

HUGHES, District Judge.

After a trial in bankruptcy court, Bruce S. Hinkley appeals from an adverse judgment allowing the claim in full of H. Y. Robinson, Sr. The judgment of the bankruptcy court will be affirmed.

*Facts.*

The origin of this controversy lies in a contract between Robinson and Stanton Hinkley, father of the defendant. Robinson paid $28,450 to Stanton Hinkley for a 35–foot Concorde sedan cruiser. The boat was not delivered, and the funds were never returned to Robinson. Based on this transaction Stanton Hinkley was indicted in Waller County, Texas, for theft by a bailee. Shortly before the criminal trial, an agreement was reached where Stanton Hinkley, his wife, daughter, and son would sign a promissory note as restitution, in return for Robinson requesting the district attorney to drop the charges. The signatures of the other family members were necessary because Robinson had evidence of asset transfers among the family.

Later that same day, Stanton Hinkley asked his son, Bruce, to sign the note. Bruce resisted, but after two unreturned calls to Robinson's attorney, he relented to his father's pressure and signed the promissory note. Nine days later, on July 19, 1972, the indictment against Stanton Hinkley was dismissed for "insufficient evidence."

In 1976, four years later, Robinson commenced a suit in a Texas state court on the unpaid note against Bruce Hinkley, his father, mother, and sister. In 1982, Bruce Hinkley filed for federal bankruptcy protection under Chapter 11, and the state case was removed to the Southern District of Texas. The matter was tried and judgment was entered allowing Robinson's claim in full. *Robinson v. Hinkley* (In re Hinkley), 58 B.R. 339 (Bankr.S.D.Tex.1986).

*Points of Error.*

1. *Counterclaim.*

■ Hinkley complains because the bankruptcy court did not grant a default judgment on his counterclaim. The wording of the counterclaim left doubt whether it was indeed a counterclaim or an affirmative defense. The bankruptcy court held that it was in fact an affirmative defense. This court agrees. Robinson had simply realleged the facts constituting his affirmative defense under the heading of "counterclaim." Pleadings in the nature of avoidance like illegality, duress, or failure of consideration are affirmative defenses. The federal rules provide for a correction when a party has mislabeled his assertion:

"When a party has mistakenly designated a defense as a counterclaim . . ., the court on terms, if justice so requires shall treat the pleading as if there had been a proper designation." Fed.R.Civ.P. 8(c).

Default judgments, while sometimes appropriate, are severe. The bankruptcy court correctly stated that when there is doubt whether a default judgment should be entered, the doubt should always be resolved in favor of determining the case on the merits. *See Davis v. Parkhill–Goodloe Co.,* 302 F.2d 489, 495 (5th Cir. 1962); *Charlton L. Davis & Co. v. Fedder Data Center,* 556 F.2d 308, 309 (5th Cir. 1977).

Additionally, Robinson had answered because he filed a general denial in the state case before it was removed to the bankruptcy court, and repleading is not required after removal unless it is ordered by the court. Bankruptcy Rule 9027(h). Further, Rule 8(f) requires that "[a]ll pleadings shall be so construed as to do substantial justice." Lastly, the granting of a default judgment is in the sound discretion of the trial court, and no abuse of discretion has been shown.

## 2. *Jury trial.*

Hinkley says the bankruptcy court erred in failing to allow a jury trial. The seventh amendment to the United States Constitution establishes the right to a trial by jury only on common law issues, which of course, do not include issues within a court's equitable jurisdiction; therefore, the nature of the relief sought determines the availability of a jury trial. The issues in this case are clearly only under the court's equity jurisdiction. The bankruptcy court was correct in denying a jury trial. This case is nothing more than a claim against a bankrupt's estate. On the facts, this is purely a matter for the equity powers of the district court that were delegated to the bankruptcy court. This is true even though a jury would be available on an identical issue in state court. *Katchen v. Landy,* 382 U.S. 323, 337, 86 S.Ct. 467, 476, 15 L.Ed.2d 391 (1966).

## 3. *Enforceability and Legality of the Note.*

Hinkley alleges that the court's findings of fact on legality and enforceability of the promissory note were insufficient and contradictory. This court reviews the bankruptcy court's findings of fact using a clearly erroneous standard. Bankruptcy Rule 8013. "[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson v. City of Bessemer City,* 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).

Hinkley complains that the promissory note amounted to compounding under Texas law. The Texas statute that outlawed compounding at the time reads:

Whoever has knowledge that an offense against the penal laws of the State of Texas has been committed, and shall agree with the offender, directly or indirectly, not to prosecute or inform on him in connection of money or other valuable thing . . . promised to him by such offender, . . . shall be fined not less than one hundred nor more than one thousand dollars.

Tex.Ann.P.C. art. 428 (replaced by Tex. Penal Code Ann. § 38.06). Hinkley confuses restitution with compounding. Restitution is the amount which would put the defrauded party in as good a position as he would have been in if no contract had been made. It restores to the party the value of what he parted with in performing the contract. *See Coon v. Schoeneman,* 476 S.W.2d 439 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r. e.); 5 Corbin, Contracts §§ 996, 1102 (1964). Robinson paid Stanton Hinkley for a boat; no boat was delivered; Robinson is allowed to demand his money back.

Compounding is the payment of something of value to end a criminal prosecution. The difference appears subtle, but it is indeed great. A criminal cause of action does not belong to a wronged party; it belongs to the state. Robinson could not

and did not dismiss the charges against Stanton Hinkley. He only requested that the charges be dropped because he believed the note had made him whole, although the later default on the note proved his belief erroneous. Robinson never stated he would refuse to testify and there is no evidence of his "vast power" over the Walker County judiciary or law enforcement agencies to have the charges dropped.

Texas law is plain on what circumstances render a note unenforceable for compounding.

> To render a note or deed of trust void ..., the parties must expressly or impliedly agree that anticipated prosecution of the offender will be suppressed by one of the parties to the transaction; and a note and a deed executed by one of the parties to the other, with the mere hope that their execution may avoid prosecution for crime or mitigate punishment in the event of prosecution, are not thereby rendered illegal.

*Merrell v. Timmons*, 138 Tex. 250, 158 S.W.2d 278, 279 (1941). *Ward v. Ward*, 68 S.W.2d 1071 (Tex.Civ.App.—Beaumont 1934, no writ).

Hinkley's brief makes innumerable references to Robinson's "power" in Walker county and his sinister ability to have Stanton Hinkley railroaded into jail. If Hinkley had evidence of this he should have presented it at trial. There is no evidence outside of the Hinkleys' bare allegations that Robinson had any more power in Walker county than any other citizen when it comes to pressing charges or requesting charges be dropped after restitution is paid.

Hinkley relies on the case of *Lewkowicz v. El Paso Apparel Corp.*, 625 S.W.2d 301 (Tex.1981), to support his assertion of illegality. Those facts do not even remotely resemble this case. In *Lewkowicz*, a husband and wife were imprisoned in a Mexican jail for four months until they executed three deeds, including one for their homestead, and a consent judgment. The Lewkowiczs steadfastly maintained their innocence but signed the documents because "[d]uring the four months of incarceration Lucy's mental and physical health deteriorated appreciably; she lost 30 to 40 pounds, became highly nervous, cried a great deal and talked of suicide." *Id.* at 302. In addition, there was an express agreement that the Lewkowiczs would be pardoned upon execution of the deeds and consent judgment.

Hinkley has never denied the debt was just. Hinkley had not proved an express agreement and only attempts to prove an implied agreement by repetitive reference to the statement by the secretary of Robinson's attorney that "Mr. Hirtz ... will keep his end of the bargain." Stanton Hinkley was not in prison at the time the note was executed, and nothing shows that Stanton Hinkley's duress was anything more than the fear of facing a trial for a theft Hinkley does not deny. This skimpy evidence was not enough for the factfinder and is certainly not enough for this court on appeal. Hinkley's brief consistently uses factual assertions and innuendos drawn from these assertions that the trial court found just were not so. Granted, some facts supported his position, but the trial court and this court find many more facts to the contrary. Hinkley's use of his facts in relation to his supporting authorities clearly overshoots the supporting testimony. He cites good authority and true rules of law, but his facts fail to approach the facts in the cases cited.

Hinkley argues with great vigor that this transaction was illegal from its inception. Taking Hinkley at his word, he had full knowledge of the illegality from the start and thus he was *in pari delicto* with Robinson and the law dictates the court leave the parties as it found them.

The bankruptcy court found the contract was not illegal because Robinson offered evidence that showed he would only *request* the district attorney dismiss the charge after restitution was made. The bankruptcy court further found the note was not made under duress because Hinkley had other means to protect himself instead of signing the note. Indeed, the pressure was against the son by both the

father and Robinson; Robinson had a right to demand restitution from the debtor-father for the money Stanton Hinkley converted. If a bank rather than a son had endorsed the elder Hinkley's performance of restitution, would the bank have a duress defense? No. Obviously Hinkley was under a great deal of pressure, but it was not duress or compounding under Texas law. The court concludes that the bankruptcy court's findings of fact were not clearly erroneous.

### 4. *Failure to Dismiss.*

■ Hinkley further alleges the bankruptcy court committed error by failing to dismiss Robinson's complaint for Robinson's tardy preparation of the pre-trial order. Modification of pre-trial orders falls within the discretion of the trial court. *Lirette v. Popich Bros. Water Transport, Inc.,* 660 F.2d 142 (5th Cir.1981). Robinson asserts that the failure to complete the pretrial order as scheduled was the result of last minute settlement negotiations. While this court does not condone failure to abide by a bankruptcy court's scheduling order, if the bankruptcy court concluded that its proceedings were not so adversely affected to warrant the imposition of a sanction, on appeal we do not need to take offense for the trial judge. Hinkley has not shown that he was prejudiced by Robinson's late filing. Dismissing Robinson's case in this instance would be far too draconian.

### 5. *Amendments to the Pre-Trial Order.*

■ The bankruptcy court allowed Robinson to amend his pre-trial order and produce, as an exhibit, the promissory note that formed the bedrock of the entire dispute. Clearly, this was not an abuse of discretion. Hinkley cannot show prejudice because he has always admitted existence of the note evidencing the underlying debt. Indeed, his quibbling at trial and on appeal about a document whose authenticity is conceded and whose contents were known by all is the sort of behavior that caused Rule 11 to be adopted.

### 6. *Admission of Exhibits Not in the Pre-Trial Order.*

Without undermining the necessity of complete pre-trial orders, this rule cannot be slavishly followed at the expense of justice. It is at the court's discretion to allow any type of deviation, and

> it is a fundamental principle of pre-trial that this procedure be flexible, with power reserved to the trial judge to amend the order or permit a departure from strict adherence to the pre-trial statements of either party when the interests of justice make such a course desirable. Otherwise a pretrial order or pre-trial statements would hold the parties in a vise, and the result might be just about as bad as a return to the old sporting theory of justice.

*Clark v. Pennsylvania R.R. Co.,* 328 F.2d 591, 594 (2d Cir.1964), *cert denied,* 377 U.S. 1006, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1964). No abuse of discretion nor any prejudice has been shown.

### 7. *Cross Examination about Defendant's Exhibit No. 9.*

■ The trial court held that cross-examination about the defendant's exhibit 9 was not relevant to its determination and excluded it as evidence. The exhibit was a quasi-love letter written by Ann Trappey, Hirtz's secretary from 1976–1979. The letter was a subterfuge in an attempt to get Hinkley to disclose his whereabouts. The evidence shows this scheme was concocted by an associate at Hirtz's firm and Trappey, but Hirtz learned of it only after the fact. This letter was properly excluded. Testimony cannot be impeached by others' actions of which one does not know or condone. While this letter ploy is unfortunate and emblematic of the level to which this litigation dropped, it is not something that Hinkley has shown would impeach Hirtz. On appeal Hinkley has not shown that the trial court abused its discretion. Since the law places the responsibility of the trial of cases in the hands of the trial judge, a large degree of discretion is essential in the conduct of that trial within a broadly defined framework. "The rule in this circuit is that the trial court's rulings

**613**

on relevancy and materiality of evidence will not be disturbed absent a clear showing of an abuse of discretion." *United States v. Brown*, 547 F.2d 1264, 1266 (5th Cir.1977) (per curiam).

8. *Hinkley's Signature.*

■ Hinkley urges that the trial court should have ruled that he was an accommodation party instead of a co-maker of the promissory note. On its face the note states, "we the undersigned for a value received jointly and severally promise to pay to the order of Herndon Robinson, Sr., Twenty Eight Thousand Four Hundred–Fifty and 00/100 Dollars ($28,450.00)" and contains four signatures on the bottom right-hand side of the note. That is plain and conclusive. In Texas, the law on this is also plain. A party who signs a note is a maker unless the note itself specifically states otherwise. Tex.Bus. & Com. Code § 3.118(5) (1984). The presumption of co-maker is well established in Texas case law. *Caldwell v. Stevenson*, 567 S.W.2d 278, 280 (Tex.Civ.App.—Austin 1978, no writ). The burden was on Hinkley to prove that he was not a co-maker of the note. The court's determination that Hinkley was a co-maker of the note was supported by substantial evidence. With the ruling that Hinkley was a co-maker of the note, the appellant's next point of error, asserting that Hinkley was discharged on the note by the release of the principal obligor, fails.

9. *Substitution of Party.*

■ The initial plaintiff H. Y. Robinson, Sr., died two and one-half months after the trial court rendered its judgment. Hinkley asserts substitution of Robinson's heirs at law was improper since there had not been any administration of the estate of the decedent. Texas law has no requirement for administration, and Robinson's widow and three children are his heirs at law and proper successors in interest to this claim.

*Conclusion.*

The plaintiff's 12–year old claim shall be allowed in full, and the judgment of the bankruptcy court will be affirmed. Costs will be taxed against Hinkley.